Slip Op. 15 - 127

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GANG YAN DIAMOND PRODUCTS, INC., CLIFF INTERNATIONAL LTD., and BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, | : : : : : |
| Plaintiffs, | : : |
| v. | : Before: R. Kenton Musgrave, Senior Judge : |
| UNITED STATES, | : Court No. 14-00148 : |
| Defendant, | : : |
| and | : : |
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : : : |
| Defendant-Intervenors. | : : |

**OPINION**

[Remanding third administrative review of antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Dated: November 9, 2015

    *Jeffrey S. Neeley* and *Michael S. Holton*, Hush Blackwell, LLP, of Washington, DC, for the plaintiffs Gang Yan Diamond Products, Inc., Cliff International Ltd., and Beijing Gang Yan Diamond Products Company

    *Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director. Of Counsel on the brief was *Aman Kakar*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley, Rein & Fielding, LLP, of Washington, DC, for the defendant-intervenors.

Musgrave, Senior Judge: This opinion concerns the third administrative review conducted by the defendant International Trade Administration, U.S. Department of Commerce ("Commerce") of *Diamond Sawblades from the People's Republic of China* ("PRC") ("*Third Review*")[1] covering the 2011-2012 period. As with the two prior administrative reviews, the plaintiffs filed this action to preserve their challenge to the country-wide (or "PRC-wide") rate applied to them as part of the "ATM entity."[2] Jurisdiction here again falls under 28 U.S.C. §1581(c), and administrative determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law" are to be held unlawful. 19 U.S.C. §1516a(b)(1)(B)(i). The matter will remanded due to the following.

The plaintiffs recast a number of their arguments previously raised, to the effect that the PRC-wide rate is an adverse facts rate, and that its application to them in this administrative review is unlawful given that the PRC-wide entity, including the "ATM entity" (including the plaintiffs), "fully cooperated" in the proceeding. *See* 19 U.S.C. § 1677e. Most of the plaintiffs' arguments were addressed by the prior decision on the first administrative review. *See Diamond*

---

[1] *Diamond Sawblades and Parts Thereof From the People's Republic of China*, 79 Fed. Reg. 35723 (Jun. 24, 2014) (final rev. results), PDoc 487, and accompanying issues and decision memorandum ("*IDM*") (July 11, 2014), PDoc 471.

[2] Commerce continued to consider the "collapsed" ATM entity as consisting of Advanced Technology & Materials Co., Ltd., AT&M International Trading Co., Ltd., Beijing Gang Yan Diamond Products Company, Gang Yan Diamond Products, Inc., Cliff (Tianjin) International Limited Company, and HXF Saw Co., Ltd. *See* Memorandum to File, *re* "Affiliation and the ATM Single Entity" (Dec. 3, 2012), PDoc 346.

*Sawblades Manufacturers' Coalition v. United States*, 39 CIT \_\_\_, Slip Op. 15-105 (Sep. 23, 2015). The court will here readdress certain arguments pertinent to resolution of this matter.

As in their comments on the remand results of the first and second administrative reviews, the plaintiffs assume that Commerce's finding of "cooperation" extends to the full PRC-wide entity. *See*, *e.g.*, Pls' R. 56.2 Br. at 3 ("[t]he finding of cooperation by the AT&M Entity responding for the PRC-wide entity, is equally applicable to this review as to the prior two reviews") & 4 ("the full cooperation of the PRC-wide entity, responding through the AT&M Entity, is readily apparent"); Pls' Reply at 4 ("the full cooperation of the PRC-wide entity, responding through the AT&M entity"). That is an inexact interpretation of the *Third Review* final results. It is clear from the *IDM* that Commerce examined the ATM entity from the perspective of the ATM entity's arguments that it was entitled to a separate rate. *See*, *e.g.*, *IDM* at cmt. 1. It is also clear that the arguments the ATM entity made before Commerce were advanced on its own behalf, not on behalf of the PRC-wide entity. *See*, *e.g.*, *id*. at cmt. 3. In addition, the record does not indicate that the ATM entity was authorized, by either Commerce or any PRC-wide authority, to speak for the PRC-wide entity, only that the plaintiffs, as part of the ATM entity, were also part of the PRC-wide entity. *See generally id*.

At this point, Commerce's defense of applying to the plaintiffs the country-wide rate from the original investigation (*i.e.*, 164.09%) rests on the concept of the finality of the administrative review process. This *Third Review* is distinct from the first and second administrative reviews in so far as Commerce denied separate rate status to the ATM entity during the administrative process rather than pursuant to voluntary remand. And Commerce has not requested

voluntary remand for this review as it did for the first and second reviews. The court is mindful of the fact that the *IDM* was prepared as of and dated June 18, 2014, whereas the results of the redeterminations of the first and second administrative reviews were prepared as of and dated April 10, 2015, and May 18, 2015, respectively. In other words, as Commerce states, at the time of the *Third Review*'s final results it had no record evidence that would require recalculation of the country-wide rate established in the investigation. Nonetheless, the tenor of the plaintiffs' arguments is to the effect that the *Third Review* final results fail to give due consideration to the plaintiffs' cooperation during the proceeding, in particular with respect to the effect of that cooperation upon the PRC-wide rate applied to it. With respect to the first and second administrative review redeterminations, Commerce considered, and successfully defended, that once it was determined that the ATM entity was ineligible for a separate rate, the circumstance triggered a "review" of the PRC-wide rate, apparently in accordance with policy or practice, and that the ATM entity's "cooperation" needed to be taken into account in such "reviews." The *Third Review*'s final results as they currently stand thus appear anachronistic in comparison with those final results of redeterminations. At the very least, this matter requires remand for further clarification of why the determination of the ATM entity's ineligibility for a separate rate did not trigger a similar "review" of the PRC-wide rate, and specifically what Commerce's policy or practice was at the time, if it was not as described in the decision on the results of redetermination of the first administrative review. *See* Slip Op. 15-105 at 11. Of course, Commerce also has discretion to reconsider, if that is appropriate.

**So ordered.**

Dated: November 9, 2015                            /s/ R. Kenton Musgrave
       New York, New York                         R. Kenton Musgrave, Senior Judge