Slip Op. 16 - 49

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| GANG YAN DIAMOND PRODUCTS, INC., CLIFF INTERNATIONAL LTD., and BEIJING GANG YAN DIAMOND PRODUCTS COMPANY, | : : : : : |  |
| Plaintiffs, | : : |  |
| v. | : : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : : | Court No. 14-00148 |
| Defendant, | : : |  |
| and | : : |  |
| DIAMOND SAWBLADES MANUFACTURERS' COALITION, | : : : |  |
| Defendant-Intervenors. | : : |  |

**OPINION**

[Sustaining results of remand of third administrative review of antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China.]

Decided: May 11, 2016

    *Jeffrey S. Neeley* and *Michael S. Holton*, Husch Blackwell, LLP, of Washington, DC, for the plaintiffs.

    *John J. Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant.  With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.  Of Counsel on the brief was *Aman Kakar*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

    *Daniel B. Pickard* and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, DC, for the defendant-intervenors.

Musgrave, Senior Judge: Now before the court are the results of remand of *Diamond Sawblades from the People's Republic of China* ("PRC") ("Remand")[1] of the defendant's International Trade Administration, U.S. Department of Commerce ("Commerce"). The plaintiffs' ("Gang Yan") comments on the remand results address the appropriate rate to be assigned to the Advanced Technology & Materials ("ATM") single entity, of which the plaintiffs are part. As explained below, the plaintiffs failed to exhaust administrative remedies and the matter will be sustained on that basis. In passing, however, the court notes that even if it were to consider Gang Yan's arguments, Commerce's analysis of the rate applicable to the ATM single entity on remand appears consistent with this court's prior holdings and appears to provide a reasonable resolution of the questions before the agency.

In the original third administrative review determination, Commerce found that the ATM single entity had not demonstrated sufficient independence from state control to qualify for a separate rate, and therefore it included the ATM single entity as part of the PRC-wide entity. *Diamond Sawblades and Parts Thereof From the PRC*, 79 Fed. Reg. 35723, 35724 (June 24, 2014) (final results of 2011-2012 admin. review), and accompanying issues and decision memorandum at cmt. 1. For the antidumping duty margin, Commerce continued to use the PRC-wide entity rate of 164.09 percent determined during the less than fair value ("LTFV") investigation. *See Diamond Sawblades and Parts Thereof From the PRC*, 78 Fed. Reg. 77098 (Dec. 20, 2013) (preliminary results of 2011-2012 admin. review), and accompanying decision memorandum at 9-10.

---

[1] *Diamond Sawblades and Parts Thereof From the People's Republic of China*, 79 Fed. Reg. 35723 (Jun. 24, 2014) (final rev. results), PDoc 487, and accompanying issues and decision memorandum (July 11, 2014), PDoc 471. Those results cover the 2011-2012 review period.

After Commerce issued its original determination for the third administrative review, Commerce issued remand determinations related to the first and second administrative reviews. In those redeterminations, Commerce determined contrary to the earlier findings in the first and second reviews that the ATM single entity was not eligible for a separate rate and that it was a part of the PRC-wide entity, such redeterminations being consistent with *Advanced Technology & Materials Co. v. United States*, 37 CIT ___, 938 F. Supp. 2d 1342 (2013), *aff'd*, 581 F. App'x. 900 (Fed. Cir. 2014). In both of those remand redeterminations, Commerce calculated a simple average of the pre-existing PRC-wide rate (*i.e.*, the 164.09 percent determined in the less-than-fair-value investigation) with the final weighted-average margin calculated for the ATM single entity in each review (*i.e.*, 0.15 percent for the first review and 0.00 percent in the second review), which yielded new PRC-wide rates for those reviews of 82.12 percent and 82.05 percent, respectively. Commerce successfully defended its PRC-wide rate calculations and application to the ATM single entity in its remand determinations for the first and second administrative reviews, those redeterminations were sustained, and they are now under appeal. *See Diamond Sawblades Manufacturers' Coalition v. United States*, No. 13-00078, 39 CIT ___, Slip Op. 15-105 (Sept. 23, 2015), *appeal docketed*, No. 16-1253 (Fed. Cir. Nov. 24, 2015); *see also Diamond Sawblades Manufacturers' Coalition v. United States*, No. 13-00241, 39 CIT ___, Slip Op. 15-116 (Oct. 21, 2015), *appeal docketed*, Consol. No. 16-1254 (Fed. Cir. Nov. 24, 2015). In light thereof, the PRC-wide rate from the LTFV investigation "appear[ed] anachronistic" as the final results of the third administrative review that is the subject of this case, and those results were therefore remanded with the request that Commerce clarify or consider whether it would be appropriate to revise the PRC-wide rate in the same way for this third

administrative review. *See Gang Yan Diamond Products, Inc. v. United States,* Court No. 14-00148, 39 CIT ___, Slip Op. 15-127, at 4 (Nov. 9, 2015) (Remand Opinion).

   Commerce's remand redetermination explains that during the original third administrative review proceeding, the PRC-wide entity was under review for two similar reasons: (1) 27 non-selected companies, for which administrative review was initiated, did not rebut the presumption of government control, and (2) the ATM single entity, a mandatory respondent, also failed to rebut the presumption. Remand at 4. Pursuant to Commerce's practice at the time, that failure (of these 27 companies as well as of ATM) triggered a review of the PRC-wide entity,[2] and Commerce applied the only PRC-wide rate available at that time, *i.e.*, the 164.09 percent rate determined in the LTFV investigation. *Id*. at 4-5. In other words, unlike the first and second administrative reviews, Commerce determined that the ATM single entity was not eligible for a separate rate in the third administrative review and therefore did not calculate a weighted-average dumping margin for the ATM single entity; therefore Commerce did not have a contemporaneous weighted-average dumping margin for the ATM single entity to include in the PRC-wide rate to reflect the experience of the ATM single entity as a part of the PRC-wide entity. *Id*. at 6. However, in light of the affirmed PRC-wide rate from the second administrative review, Commerce recognized that the PRC-wide rate had changed from its original results in the third administrative review, and it assigned the PRC-wide entity the rate (*i.e.*, 82.05 percent) from the remand redetermination of the

---

[2] Commerce notes that review of the PRC-wide entity is now no longer conditional but subject to request therefor, and that "the inclusion of initiated companies within the NME entity does not result in a review of the NME entity or in a change of the NME entity rate." Remand at 4 n.16, referencing *Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 Fed. Reg. 65963 (Nov 4, 2013).

second review. *Id*. at 7. Commerce explains that the 82.05 percent rate, (which, again, consisted of a simple average of the PRC-wide rate of 164.09 percent from the investigation and the 0.00 percent weighted-dumping margin calculated for the ATM single entity in the second administrative review) included the experience of a fully cooperative element of the PRC-wide entity. *Id*. at 7.

Commerce released the draft results of the remand and invited comments from interested parties. Commerce Letter Releasing Draft Remand To Parties (Jan. 14, 2016), PDoc 1. Commerce received no comments on the draft remand redetermination, and for the final remand redetermination it applied the 82.205 percent rate to the PRC-wide entity in the third administrative review. Remand at 7.

In its comments filed with this court, Gang Yan now challenges Commerce's calculation of the PRC-wide rate that is applicable to the ATM single entity, again arguing that Commerce failed to address why the 164.09 percent PRC-wide rate from the LTFV investigation, which is based on adverse facts available, can continue to be lawfully included within (as a part of) the PRC-wide entity rate in the third administrative review when the PRC-wide entity did not fail to cooperate in this review. *See* Gang Yan Cmts. at 2; *see also* Remand Opinion at 2-3.

However, Gang Yan failed to exhaust its administrative remedies on the issue of the inclusion of the 164.09 percent rate. A party must present all arguments to Commerce at the time Commerce is addressing the issue, including during a remand proceeding. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (a party failed to exhaust its administrative remedies when it failed to comment on Commerce's draft remand results); *see also AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998) (same). Gang Yan did not

submit any comments to Commerce on the draft remand redetermination, in order to provide Commerce an opportunity to address its claims, and Gang Yan does not argue that an exception to exhaustion applies in this case.[3]

---

[3] Moreover, even if the court were to consider Gang Yan's arguments, Gang Yan does not show error in Commerce's calculation of the PRC-wide rate. Gang Yan's comments on the remand results reiterate the arguments raised in its April 8, 2015 motion for judgment on the agency record and memorandum in support, to the effect that the PRC-wide rate that the ATM single entity received in this proceeding should not have been based on the 164.09 percent adverse facts available rate calculated for the PRC-wide entity during the investigation because Commerce itself stated that it did not find that any part of the PRC-wide entity failed to cooperate in this review. *See* Gang Yan Cmts at 2-3. However, the PRC-wide rate applied in the third administrative review, 82.05 percent, is the same PRC-wide rate that was applied in the second administrative review. The inclusion of the 164.09 percent rate in the simple average of 82.05 percent rate was previously found not unreasonable. *Diamond Sawblades Manufacturers' Coalition v. United States*, No. 13-00078, 39 CIT ___, Slip Op. 15-105, at 14-16 (Sep. 23, 2015). Although Commerce had calculated a *de minimis* weighted-average margin for the ATM single entity in that second administrative review, there were at least 27 other companies that failed to rebut the presumption of state control and were determined to be part of the PRC-wide entity. *See Diamond Sawblades and Parts Thereof From the People's Republic of China*, 78 Fed. Reg. 36166 (June 17, 2013) (final results of second administrative review). For the third administrative review, Commerce again did not receive data from any of those non-ATM single entity PRC-wide entity members. They were not subject to individual review, Commerce asked no questions of them, and their "cooperation" was not an element of the PRC-wide rate or its application. Because neither the 27 other companies nor ATM had provided any new information about the non-ATM-entity portion of the PRC-wide entity at the time of its original third review determination, Commerce determined that the best information for the PRC-wide entity remained the rate calculated in the investigation, *i.e.*, 164.09 percent, and contrary to Gang Yan's arguments, using a rate that incorporates the 164.09 percent rate was proper because it was public information that was known to Commerce and all interested parties. *See* Gang Yan Cmts at 2. At this point, Commerce contends that since "no new evidence was presented to suggest that the 164.09 percent rate calculated in the investigation was no longer applicable to the *non-ATM portions* of the PRC-wide entity," it was correct to look to the investigation as a source for information, Def's Resp. at 7 (court's italics), but that point appears to rest on the false premise that the ATM single entity was distinguishable from the PRC-wide entity. Be that as it may, because Commerce subsequently revised the PRC-wide rate in the remand determination applicable to the second administrative review of the antidumping duty order, Commerce appropriately updated the PRC-wide rate in the remand determination at issue here so that it was consistent with the most recent segment of the diamond sawblades from the PRC proceeding. *See* Remand at 7. The parties have already fully briefed this same issue (the revision of the PRC-wide rate) twice, in challenges

(continued...)

      Commerce's remand results appearing in compliance with the orders of remand, supported by substantial evidence, and in accordance with law; and there appearing to be no reason otherwise for requiring further remand, the results of remand will be sustained.

                                                             /s/ R. Kenton Musgrave
                                                             R. Kenton Musgrave, Senior Judge

Dated: May 11, 2016
       New York, New York

---

[3] (...continued) to the first and second administrative review, and the revisions have been sustained by this court each time. *See Diamond Sawblades Manufacturers' Coalition v. United States*, No. 13-00078, 39 CIT ___, Slip Op. 15-105, at 14-15 (Sep. 23, 2015); *Diamond Sawblades Manufacturers' Coalition v. United States*, No. 13-00241, 39 CIT ___, Slip Op. 15-116, at 4 (Oct. 21, 2015). Here, as in those redeterminations, Commerce's remand results for this third administrative review appear to provide a reasoned explanation for Commerce's decision to apply the PRC-wide entity rate that was ultimately applied in the second administrative review. Being consistent with Commerce's approach after remand of the first and second administrative reviews, the remand results at bar would appear to be sustainable on that basis as well, *i.e.*, even were the court to consider Gang Yan's arguments, they do not appear to show error in Commerce's remand determination, and the inclination might be to sustain in accordance with the redeterminations of the first and second administrative reviews. But be all that as it may, Gang Yan failed to exhaust its administrative remedies and the merits of those arguments need not be reached.